JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
ELIZABETH J. SHAPIRO
ISAAC R. CAMPBELL
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6130
Washington, D.C. 20530
Tel: (202) 616-8476
Fax: (202) 616-8460
isaac.campbell@usdoj.gov

Attorneys for Defendant Environmental Protection Agency

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, *ex rel*. EDMUND G. BROWN JR., ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendant. | CV 08-020735 SC <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF VAUGHN INDEX WITHIN 14 DAYS** <br><br> Date:  April 23, 2008 <br> Time:   10:00 a.m. <br> Judge:   Honorable Samuel Conti <br> Place:   Courtroom 1, 17th Floor |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant Environmental Protection Agency ("EPA") hereby opposes plaintiff's motion to compel defendant to produce an index pursuant to Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974) ("Vaughn index") to the extent that such motion requests that defendant: (1) be ordered to produce a Vaughn index prior to the filing of its summary judgment motion; and (2) be ordered to produce a Vaughn index within 14 days.  Defendant has no objection to preparing and submitting a Vaughn index along with its anticipated summary judgment motion that contains the information required under Ninth Circuit case law.  Plaintiff's motion, however, is

1  premature.  As plaintiff is not entitled to the relief it seeks, plaintiff's request for immediate

2  production of a <u>Vaughn</u> index is improper and should be denied.

3                                    II.      FACTUAL BACKGROUND

4        In December 2005, the California Air Resources Board ("CARB") requested from EPA a

5  waiver of preemption under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b), so as to allow

6  CARB's regulations to control greenhouse gas emissions from new motor vehicles.  In a letter, dated

7  December 19, 2007, EPA Administrator Stephen Johnson indicated his intention to reject CARB's

8  request for a waiver.  On February, 29, 2008, EPA Administrator Johnson signed a Federal Register

9  Notice Denying a Waiver of Clean Air Act Preemption for California's 2009 and Subsequent Model

10  Year Greenhouse Gas Emission Standards for New Motor Vehicles.

11        Subsequent to the Administrator's December 19, 2007 letter, EPA received several

12  Congressional and Freedom of Information Act ("FOIA") requests for documents related to CARB's

13  waiver request.  EPA received requests from Senator Barbara Boxer and Congressman Henry

14  Waxman by letters dated December 20, 2007 (attached hereto as Defendant's Exhibits 1 & 2), from

15  plaintiff by letter dated December 27, 2007, and from Natural Resources Defense Council, Inc.

16  ("NRDC") and Environmental Defense ("ED") by letters dated December 20, 2007 and December

17  27, 2007, respectively.  <u>See</u> Defendant's Exh. 3 & 4.  Nearly simultaneous with the filing of this

18  complaint, on February 1, 2008, NRDC and ED also filed a complaint against the EPA in the United

19  States District Court for the Southern District of New York for documents related to CARB's waiver

20  request.  <u>See</u> Defendant's Exh. 5.

21        EPA substantially completed its document production to Congress by February 22, 2008.  In

22  doing so, EPA estimates that it has spent more than 2,000 hours in staff time.  See Letter from EPA

23  Administrator Stephen Johnson, dated March 20, 2008 (Defendant's Exh. 6 at p. 2).  Plaintiff's

24  request is composed of two portions.  The first portion is a subset of the information requested by

25  Congress. [1]   The search for documents responsive to this portion is complete.  At this time, EPA has

26  identified approximately 2,400 records that are exempt in whole or in part.

27  _____

28  [1]  EPA has requested that plaintiff clarify portions of its request, which may reduce the number of
    documents that are released and withheld, in whole or in part.  At this time, the parties are still in the

The second portion of plaintiff's FOIA request is for documents that were not covered by the Congressional requests.  The Agency is searching for documents responsive to this portion of the request.

### III.     ARGUMENT

<u>PLAINTIFF IS NOT ENTITLED TO A VAUGHN INDEX AT THIS JUNCTURE IN THE LITIGATION</u>

Despite plaintiff's implication to the contrary, a FOIA requester is not entitled to receive a <u>Vaughn</u> index during the administrative process.  <u>See</u>, <u>e.g.</u>, <u>Schwarz v. Dep't. of Treasury</u>, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a '<u>Vaughn</u>' index on an initial request for documents.")  In fact, "there is no statutory requirement of a <u>Vaughn</u> index or affidavit." <u>Fiduccia v. U.S. Dep't of Justice</u>, 185 F.3d 1035, 1042 (9th Cir. 1999); <u>see also</u> <u>id.</u> at 1043 ("our precedents plainly hold that neither a <u>Vaughn</u> index nor an affidavit is necessarily required in all cases").  Rather, FOIA only requires that an agency "notify" the FOIA requester of its determination "whether to comply with such request" and "the reasons therefore."  5 U.S.C. § 552(a)(6)(A)(i); <u>see also</u> <u>Fiduccia</u>, 185 F.3d at 1042.[2]  The term <u>Vaughn</u> index is not derived from a statute but from "a District of Columbia Circuit decision describing a helpful device for specifying documents not produced."  <u>Id.</u>

A <u>Vaughn</u> index "identifies each document withheld, the statutory exemption claimed, and an explanation of how disclosure would damage the interest protected."  <u>Schiffer v. FBI</u>, 78 F.3d 1405, 1408 (9th Cir. 1996).  The "purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate opportunity to review, the soundness of the

---

process of clarifying plaintiff's request.  In the interim, until the parameters of plaintiff's request can be narrowed, EPA has begun to release the non-exempt documents that it provided to Congress.  At this time, EPA has identified 9,000 pages to be released to plaintiff.  On April 23, 2008, EPA sent plaintiff one box of documents consisting of approximately 2,700 pages.  A subsequent release of approximately 2,300 pages and 4,000 pages is expected to be made on or about April 7 and April 11, 2008, respectively.

[2]  A recent amendment to the FOIA also requires that an agency identify the exemption under which a document or portion of documents is being withheld when it produces (or withholds) the requested

1  withholding." Fiduccia v. Dep't of Justice, 185 F.3d 1035, 1042 (9th Cir. 1999) (internal quotations

2  omitted). Given its purpose, courts generally do not require an agency to produce such an index

3  before an agency has asserted a position *in litigation*. See e.g., Miscavige v. Internal Revenue

4  Service, 2 F.3d 366, 369 (11th Cir. 1993) (concluding that a plaintiff's "early attempt in litigation of

5  this kind to obtain a Vaughn index . . . is inappropriate until the government has first had a chance to

6  provide the court with the information necessary to make a decision on the applicable exemptions").

7  Under Vaughn, 484 F.2d 820, specific justifications for the withholding of responsive

8  documents are required only when defendant seeks summary judgment in this case. See also 5

9  U.S.C. § 552(a)(4)(B). Requiring such detailed information is premature at earlier stages of FOIA

10  processing, whether or not the requester has filed suit. See, e.g., Judicial Watch, Inc. v. Clinton, 880

11  F. Supp. 1, 11 (D.D.C. 1995) ("The only statutory requirement applicable to an administrative agency

12  under FOIA is that it inform the requester of its decision to withhold, along with the underlying

13  reasons."); United States Committee on Refugees v. Dep't of State, No. 91-3303, 1992 WL 35089, *1

14  (D.D.C. Feb. 7, 1992) ("the preparation of a Vaughn index is unwarranted before the filing of

15  dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed

16  affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and

17  citation omitted); Stimac v. U.S. Dep't of Justice, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the

18  preparation of a Vaughn Index would be premature before the filing of dispositive motions").

19  Likewise, although plaintiff requests that defendant be ordered to produce a Vaughn index

20  within 14 days, courts generally do not require a federal agency to submit a Vaughn index before

21  summary judgment is filed. See, e.g., Miscavige v. Internal Revenue Service, 2 F.3d 366, 369 (11th

22  Cir. 1993) (FOIA cases generally should be handled on motions for summary judgment, and

23  plaintiff's early attempt in litigation to obtain a Vaughn index and take discovery was inappropriate

24  until the government first had an opportunity to provide the court with the information necessary to

25  make a decision on the applicable exemptions). Indeed, the standard practice in a FOIA action is for

26  an agency defendant to file a dispositive motion along with any other supporting material such as a

27

28  information. See 5 U.S.C. § 552(b)(9). The amendment was signed into law on Decmeber 31, 2007,
and does not apply retroactively. Plaintiff's FOIA request was made on December 27, 2007.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL VAUGHN INDEX - 08-00735 SC

Vaughn index. Thus, courts routinely deny efforts to compel federal agencies to prepare and submit Vaughn indicies prior to the filing of a dispositive motion as premature. See, e.g., Long v. Dep't of Homeland Security, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (plaintiff's request for Vaughn index premature as the government has not yet had a chance to file a dispositive motion and provide the court with the information necessary to make a decision on any material that might be subject to an exemption under the FOIA)[3]; Bassiouni v. CIA, 248 F. Supp. 2d 795, 797 (N.D. Ill. 2003), aff'd, 392 F.3d 244 (7th Cir. 2004), cert. denied, 545 U.S. 1129 (2005) (finding plaintiff's request for a Vaughn index premature because the case was "only in the initial stages"). Precedent from this Circuit, moreover, "plainly hold[s] that neither a Vaughn index nor an affidavit is necessarily required in all cases, though either or both . . . may be required in any particular case, depending on the circumstances." Fiduccia, 185 F.3d at 1042-43.[4]

None of the cases cited in plaintiff's motion addresses the timing issue of when a federal agency can be compelled to produce a Vaughn index. In neither Weiner v. Federal Bureau of Investigation, 943 F.2d 972 (9th Cir. 1991) nor Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State, 818 F. Supp. 1291 (N.D. Cal. 1992), is there any mention of when the government submitted a Vaughn index or affidavit correlating the withheld documents with a FOIA exemption. Although in one of the cases plaintiff cites, Coastal States Gas Corp. v. Dep't of Energy, 644 F.2d 969 (3d Cir. 1981), the government submitted a Vaughn index approximately three months after

---

[3]  Plaintiff may argue that the cases Long v. Dep't of Homeland Security, 436 F. Supp. 2d 38 (D.D.C. 2006) and Miscavige v. Internal Revenue Service, 2 F.3d 366 (11th Cir. 1993) are inapposite because, unlike the instant action, the plaintiffs in these cases sought to compel the federal agency defendants to produce a Vaughn index before the agency had processed the initial FOIA request or filed an answer, respectively. Such an argument, however, is unavailing. Irrespective of the timing of plaintiff's motion to compel a Vaughn index in Long and Miscavige, the courts were clear in their holdings that the timing of the submission of a Vaughn index is contemporaneous with the filing of a dispositive motion. See Long, 436 F. Supp. 2d at 44; Miscavige, 2 F.3d at 369.

[4]  But see, e.g., Hansen v. Dep't of Air Force, No. 91-0099, 1991 WL 199748 (D.D.C. April 15, 1991) (defendant required to produce Vaughn index within 42-day period where plaintiff seeking resolution of FOIA request for 10-year period); Providence Journal Company v. U.S. Dep't of the Army, 769 F. Supp. 67, 69 (D.R.I. 1991) (defendant required to produce Vaughn index within 30-day period where there was no indication that defendant planned to file a dispositive motion and plaintiff would have short timeframe to review Vaughn index before filing opposition).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL VAUGHN INDEX - 08-00735 SC

1  plaintiff filed its FOIA complaint, it did so by stipulation with the plaintiff.  Id. at 972.  Additionally,

2  unlike the present case, the federal defendant in Coastal States ultimately declined to file a summary

3  judgment motion and thus could not file a Vaughn index with its dispositive motion.  Id. at 973.

4  Finally, while in Coastal States the Third Circuit noted, as plaintiff points out, that FOIA "embodies a

5  policy of expedited handling of request for documents," id. at 972; see also Pl. Br. at p.4, the Third

6  Circuit neither held nor implied that such a policy warrants requiring a defendant to produce a

7  Vaughn index prior to filing a dispositive motion.  Indeed, it is worth noting that plaintiff provides no

8  case law supporting the proposition that a court must compel a federal agency to produce a Vaughn

9  index prior to submitting a dispositive motion.

10       Moreover, two of the cases plaintiff cites in its brief actually favor defendant's position here.

11  In Lion Raisins, Inc. v. Dep't of Agriculture, 354 F.3d 1072 (9th Cir. 2004), the government filed

12  declarations along with its summary judgment motion, and the appellate court merely held that the

13  district court should have required detailed public declarations before conducting an in camera review

14  and granting the government summary judgment.  Id. at 1078-79, 1084.  Likewise, in Shiffer v.

15  Federal Bureau of Investigation, 78 F.3d 1405 (9th Cir. 1996), the parties did not dispute that the

16  district court had an adequate factual basis for its summary judgment decision even though the

17  government never submitted any Vaughn index.  Id. at 1408-09.

18       The standard practice in a FOIA action for an agency defendant to file a Vaughn index with a

19  dispositive motion (where a dispositive motion is to be filed) is based upon the need to maintain an

20  efficient adjudicative process in FOIA cases, and upon the practical reality that some form of

21  affidavit, declaration, or index virtually always accompanies the federal agency's motion for

22  summary judgment.  See, e.g., Stimac, 620 F. Supp. at 213 (denying a motion for preparation of a

23  Vaughn index because "[t]he filing of a dispositive motion, along with detailed affidavits, may

24  obviate the need for indexing the withheld documents").  To the extent that plaintiff objects to this

25  long-standing practice on the grounds that plaintiff would not have sufficient time to evaluate, review

26  and formulate any challenges to defendant's Vaughn index prior to filing its opposition (or cross-

27  motion for summary judgment), the reasonable remedy is not to require defendant to prematurely

28

1    produce a <u>Vaughn</u> index.  Rather, to the extent necessary and reasonable, plaintiff can move for

2    additional time to prepare its opposition.

3          In light of the foregoing, defendant EPA proposes the following schedule for the resolution of

4    plaintiff's FOIA claim:

5          1.  On April 3, 2008, EPA sent plaintiff one box of documents consisting of approximately

6              2,700 pages.  On or around April 7, 2008, EPA expects to send plaintiff a second box of

7              documents consisting of approximately 2,300 pages.  On or around April 11, 2008, EPA

8              will send plaintiff a box and a half of documents consisting of roughly 4,000 pages.

9              These documents correspond to the first portion of plaintiff's FOIA request.

10         2.  On or around April 11, 2008, EPA, expects to complete its search for the second portion

11             of documents (records that were not covered by the Congressional FOIA request)

12             responsive to plaintiff's FOIA request.

13         3.  On or around May 23, 2008, EPA will complete its review and processing of the

14             remaining 2,300 records responsive to plaintiff's FOIA request, and will provide plaintiff

15             with a copy of any remaining non-exempt records, in full or in part, responsive to

16             plaintiff's request.

17         4.  On or around May 30, 2008, EPA will provide plaintiff with a list of the records that EPA

18             had withheld, in full or in part, responsive to plaintiff's request.  Each record on the list

19             would be identified with a unique identification number and a brief description.

20         5.  On June 23, 2008, EPA will file a motion for summary judgement based on a sample

21             <u>Vaughn</u> index[5], consisting of a sample of every tenth document, or approximately ten

22             percent of the total number of withheld records, in full or in part, seeking dismissal of the

23             claim under FOIA that the plaintiff asserted in this case.

24    _____

25    [5]  A <u>Vaughn</u> index is a "detailed public affidavit[] identifying the documents withheld, the FOIA
26    exemptions claimed, and a particularized explanation of why each document falls within the claimed
      exemption."  <u>Lion Raisins</u>, 354 F.3d at 1082.  In cases where "the number of documents is excessive
27    and it would not realistically be possible to review each and every one," sampling procedures may be
      employed.  <u>Meeropol v. Meese</u>, 790 F.2d 942, 958 (D.C. Cir. 1986) (quoting <u>Weisberg v. U.S. Dep't</u>
28    <u>of Justice</u>, 745 F.2d 1476, 1490 (D.C. Cir. 1984)).  A sample of as few as one percent of the pages
      from the totally or substantially withheld records is acceptable in size.  <u>Meeropol</u>, 790 F.2d at 958-59.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL <u>VAUGHN</u> INDEX - 08-00735 SC

1

IV.     <u>CONCLUSION</u>

2     For all the foregoing reasons, defendant respectfully requests that they be permitted to file a

3 <u>Vaughn</u> index along with its anticipated summary judgment motion.

4

5 Dated:  April 4, 2008

6 Respectfully submitted,

7

JEFFREY S. BUCHOLTZ
8 Acting Assistant Attorney General

9

_____/s/_____
10 ELIZABETH J. SHAPIRO
ISAAC R. CAMPBELL
11 United States Department of Justice
Civil Division, Federal Programs Branch
12 20 Massachusetts Avenue, NW, Rm.
6130
13 Washington, DC  20530
Tel: (202) 616-8476
14 Fax: (202) 616-8460

15

16 Attorneys for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

BARBARA BOXER, CALIFORNIA, *CHAIRMAN*

MAX BAUCUS, MONTANA
JOSEPH I. LIEBERMAN, CONNECTICUT
THOMAS R. CARPER, DELAWARE
HILLARY RODHAM CLINTON, NEW YORK
FRANK R. LAUTENBERG, NEW JERSEY
BENJAMIN L. CARDIN, MARYLAND
BERNARD SANDERS, VERMONT
AMY KLOBUCHAR, MINNESOTA
SHELDON WHITEHOUSE, RHODE ISLAND

JAMES M. INHOFE, OKLAHOMA
JOHN W. WARNER, VIRGINIA
GEORGE V. VOINOVICH, OHIO
JOHNNY ISAKSON, GEORGIA
DAVID VITTER, LOUISIANA
JOHN BARRASSO, WYOMING
LARRY E. CRAIG, IDAHO
LAMAR ALEXANDER, TENNESSEE
CHRISTOPHER S. BOND, MISSOURI

BETTINA POIRIER, *STAFF DIRECTOR*
ANDREW WHEELER, *MINORITY STAFF DIRECTOR*

# United States Senate

COMMITTEE ON ENVIRONMENT AND PUBLIC WORKS

WASHINGTON, DC 20510-6175

December 20, 2007

Stephen L. Johnson
Administrator
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Dear Administrator Johnson:

I was extremely disappointed to learn of your decision yesterday to deny the State of California's request for a waiver for its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles under the Clean Air Act. I am particularly concerned about reports indicating that you overrode the recommendations of your technical and legal staff in making this decision.

Even though it took two years to make this decision, the two-page letter denying the waiver is unsupported by legal or technical analysis. On its face, this decision appears to be contrary to the Clean Air Act and the science. Pursuant to its oversight responsibilities, the Environment and Public Works Committee is initiating a comprehensive review of this decision. Please provide the following:

1. All records that you or any other person in the Office of the Administrator received or reviewed that mention or are otherwise related to this waiver request, including any records presenting options, recommendations, "pros and cons," legal issues or risks, political implications or considerations, or any other record. Please provide these records by January 7, 2008.

2. All records reflecting communications that you, or any person in the Office of the Administrator, or any person in the Office of the Assistant Administrator for Air and Radiation, had with any person in the White House (including but not limited to Office of the Vice President, the Council on Environmental Quality, the Office of Management and Budget, or any other person in the Executive Office of the President) regarding or relating to this waiver request. Please provide these documents by January 7, 2008.

3. All other records making recommendations relating to this waiver request presenting options, recommendations, "pros and cons," legal issues or risks, or political implications or considerations. Please provide these records by January 14, 2008.

4. All other records relating to the California waiver request not available on the date of this letter in the EPA public docket for this waiver. This includes but is not limited to all emails or other records reflecting any communications within the agency, or communications with any person or entity outside of the agency, including the White House (as defined above) or any other agency, related to the California waiver request. Please provide these records by January 14, 2007.

Please immediately notify all EPA staff of this request with specific instructions for them to immediately initiate record collection, and to preserve all potentially relevant records. If you have any questions please contact Erik Olson of the Committee's staff at 202-224-8832.

Sincerely,

Barbara Boxer
Chairman

HENRY A. WAXMAN, CALIFORNIA
CHAIRMAN

TOM LANTOS, CALIFORNIA
EDOLPHUS TOWNS, NEW YORK
PAUL E. KANJORSKI, PENNSYLVANIA
CAROLYN B. MALONEY, NEW YORK
ELIJAH E. CUMMINGS, MARYLAND
DENNIS J. KUCINICH, OHIO
DANNY K. DAVIS, ILLINOIS
JOHN F. TIERNEY, MASSACHUSETTS
WM. LACY CLAY, MISSOURI
DIANE E. WATSON, CALIFORNIA
STEPHEN F. LYNCH, MASSACHUSETTS
BRIAN HIGGINS, NEW YORK
JOHN A. YARMUTH, KENTUCKY
BRUCE L. BRALEY, IOWA
ELEANOR HOLMES NORTON,
    DISTRICT OF COLUMBIA
BETTY McCOLLUM, MINNESOTA
JIM COOPER, TENNESSEE
CHRIS VAN HOLLEN, MARYLAND
PAUL W. HODES, NEW HAMPSHIRE
CHRISTOPHER S. MURPHY, CONNECTICUT
JOHN P. SARBANES, MARYLAND
PETER WELCH, VERMONT

ONE HUNDRED TENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON OVERSIGHT AND GOVERNMENT REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY  (202) 225-5051
FACSIMILE  (202) 225-4784
MINORITY  (202) 225-5074

www.oversight.house.gov

TOM DAVIS, VIRGINIA,
RANKING MINORITY MEMBER

DAN BURTON, INDIANA
CHRISTOPHER SHAYS, CONNECTICUT
JOHN M. McHUGH, NEW YORK
JOHN L. MICA, FLORIDA
MARK E. SOUDER, INDIANA
TODD RUSSELL PLATTS, PENNSYLVANIA
CHRIS CANNON, UTAH
JOHN J. DUNCAN, JR., TENNESSEE
MICHAEL R. TURNER, OHIO
DARRELL E. ISSA, CALIFORNIA
KENNY MARCHANT, TEXAS
LYNN A. WESTMORELAND, GEORGIA
PATRICK T. McHENRY, NORTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BRIAN P. BILBRAY, CALIFORNIA
BILL SALI, IDAHO
JIM JORDAN, OHIO

December 20, 2007

The Honorable Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Dear Administrator Johnson:

Yesterday, you announced a decision to reject California's efforts to reduce greenhouse gas emissions from automobiles. Prior to making this decision you assured the House Oversight and Government Reform Committee, as well as the state of California and many others, that you would make this decision on the merits.

It does not appear that you fulfilled that commitment. Your decision appears to have ignored the evidence before the agency and the requirements of the Clean Air Act. In fact, reports indicate that you overruled the unanimous recommendations of EPA's legal and technical staffs in rejecting California's petition.

Your decision not only has important consequences to our nation, but it raises serious questions about the integrity of the decision-making process. Accordingly, the Committee has begun an investigation into this matter. To assist our Committee in this inquiry, I request that you provide us with all documents relating to the California waiver request, other than those that are available on the public record. This request includes all communications within the agency and all communications between the agency and persons outside the agency, including persons in the White House, related to the California waiver request. And all agency staff should be notified immediately to preserve all documents relating to the California waiver request.

You should produce to the Committee all responsive documents from your office by January 10, 2008. All responsive documents from the Office of Transportation and Air Quality and the Office of General Counsel should be produced by January 17, 2008, and all other responsive documents should be produced by January 23, 2008.

The Honorable Stephen L. Johnson
December 20, 2007
Page 2

    The Committee on Oversight and Government Reform is the principal oversight committee in the House of Representatives and has broad oversight jurisdiction as set forth in House Rule X.  An attachment to this letter provides additional information about how to respond to the Committee's request.

    If you have any questions concerning this request, please have your staff contact Greg Dotson of the Committee staff at (202) 225-4407.

             Sincerely,

             Henry A. Waxman
             Chairman

Enclosure

cc:    Tom Davis
       Ranking Minority Member



NATURAL RESOURCES DEFENSE COUNCIL



OAR
HQ-RIN-DO-516-08
Due: 1/23/08

December 20, 2007

VIA HAND DELIVERY AND CERTIFIED MAIL

Larry F. Gottesman
National FOIA Officer
U.S. Environmental Protection Agency
Records, FOIA and Privacy Branch
Mail Code 2822T
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
FAX: (202) 566-2147

Re:    FREEDOM OF INFORMATION ACT REQUEST REGARDING DECISION TO
       DENY CALIFORNIA A WAIVER UNDER CLEAN AIR ACT SECTION 209

Dear Mr. Gottesman,

On behalf of the Natural Resources Defense Council ("NRDC"), I write to request the disclosure
of records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the
pertinent Environmental Protection Agency ("EPA") regulations, 40 C.F.R. § 2.100, *et seq.*

## I.    Description of Records Sought

Please produce all records[1] concerning California's request for a waiver under Section 209 of the
Clean Air Act to enforce the state's own regulations of carbon dioxide and greenhouse gas
emissions from motor vehicles. Please produce all records, and only records, that were in
existence as of midnight Eastern time on December 19, 2007. This request includes, but is not
limited to, the following:

   a)  all records relating to options for decisions on the California waiver request;
   b)  all records relating to legal risks or potential litigation outcomes concerning such options;
       and

---

[1] The term "records" is used herein to mean anything denoted by the use of that word or its
singular form in the text of FOIA. In particular, the term includes, but is not limited to, all
writings (handwritten, typed, electronic, or otherwise produced, reproduced, or stored) including,
but not limited to, correspondence, minutes of meetings, memoranda, notes, e-mails, notices,
facsimiles, charts, tables, presentations, orders, and filings.

www.nrdc.org    1200 New York Avenue, NW, Suite 400          NEW YORK · LOS ANGELES · SAN FRANCISCO
                Washington, DC 20005
                TEL 202 289-6868  FAX 202 289-1060

                *100% Postconsumer Recycled Paper*

c) all records relating to the agency's interpretation of "compelling and extraordinary conditions" under Clean Air Act section 209(b), including prior interpretations of this term.

To the extent that records responsive to this request were already available in the public docket in the matter of California State Motor Vehicle Pollution Control Standards - Request for Waiver of Preemption Under Clean Air Act Section 209(b) for Greenhouse Gas Emissions, EPA-HQ-OAR-2006-0173, as of midnight Eastern time on December 19, 2007, please identify such records, but EPA need not supply such records separately.

## II. Request for a Fee Waiver

NRDC requests that EPA waive the fee that it would otherwise charge for search and production of the records described above. FOIA dictates that requested records be provided without charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). The requested disclosure would meet both of these requirements. In addition, NRDC qualifies as a "representative of the news media" entitled to a reduction of fees under the FOIA. 5 U.S.C. § 552(a)(4)(A)(ii)(II); 40 C.F.R. § 2.107(c)(1)(iii).

### A. First Requirement

The disclosure requested here would be "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Specifically, the requested disclosure would satisfy the four elements identified at 40 C.F.R. § 2.107(*l*)(2).

The records described in Section I above shed light on a matter of considerable public interest and concern: whether California and other states may act on their own to address the imminent threat to human health and the environment presented by climate change and greenhouse gas emissions, by adopting and enforcing their own regulations of carbon dioxide and greenhouse gas emissions from motor vehicles that are more stringent than federal standards. EPA's consideration of California's request for a waiver under Section 209 of the Clean Air Act has already attracted widespread media attention, including several recent articles in national newspapers and magazines and national broadcast news features. *See, e.g.*, Juliet Eilperin, "EPA Chief Denies Calif. Limit on Auto Emissions," *Wash. Post*, Dec. 20, 2007, at A01 (attached as Exhibit A) (*also available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/12/19/AR2007121902012.html); Zachary Coile, et al., "EPA blocks California bid to limit greenhouse gases from cars," *S.F. Chron.*, Dec. 20, 2007, at A-1 (attached as Exhibit B) (*also available at* http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2007/12/20/MN55U1JD6.DTL); John M. Broder & Felicity Barringer, "EPA Says 17 States Can't Set Greenhouse Gas Rules For Cars," *N.Y. Times*, Dec. 20, 2007, at A1 (attached as Exhibit C) (*also available at* http://www.nytimes.com/2007/12/20/washington/20epa.html); Andrew Leonard, "Why is California so special?," *Salon.com* (Dec. 12, 2007) (attached as Exhibit D) (*also available at* http://www.salon.com/tech/htww/2007/12/12/california_vs_the_auto_industry/

index.html); Bryan Walsh, "California's Christmas List: Clean Air," *Time.com*, Nov. 8, 2007 (attached as Exhibit E) (*also available at* http://www.time.com/time/health/article/ 0,8599,1682116,00.html); Transcript, National Public Radio, "EPA Rejects California's Stricter Emissions Limits," Dec. 19, 2007 (attached as Exhibit F) (*also available at* http://www.npr.org/templates/story/story.php?storyId=17429142).

The records requested here pertain to EPA's consideration of California's request for a waiver under Clean Air Act Section 209. The records thus concern "the operations or activities of the government," 40 C.F.R. § 2.107(*l*)(2)(i). The tailored request in this letter seeks disclosure of important records concerning EPA's activities that will contribute meaningfully and significantly to the public's understanding of those activities, including to the public's understanding of the alternative legal bases and policy justifications considered by the agency with respect to the California waiver request. *Id.* § 2.107(*l*)(2) (ii), (iv). Disclosure of these records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject," 40 C.F.R. § 2.107(*l*)(2)(iii), because NRDC will disseminate summary and analysis of any newsworthy information conveyed in the requested records.

NRDC has a proven ability to digest and disseminate such information to the public quickly, through numerous and varied publications, educational programs, media initiatives, and public interest litigation. For example, NRDC featured California's waiver request in the most recent issue of its magazine, *OnEarth*, which is read by approximately 450,000 individuals through subscriptions, sales at newsstands, and bookstores, and available free of charge at http://www.nrdc.org/onearth. *See* Alyssa Robb, "Cars in the Courtroom," *OnEarth*, Winter 2008, at 59 (attached as Exhibit G) (*also available at* http://www.onearth.org/article/cars-in-the-courtroom).

NRDC also has the ability to disseminate information on the California waiver request through its website (www.nrdc.org) (homepage at Attachment 1), which is updated daily and draws approximately 2.7 million page views and 800,000 visits per month, future issues of *OnEarth* (sample issue at Attachment 2); its *Nature's Voice* newsletter on current environmental issues, which is published and distributed five times a year to NRDC's approximately 420,000 members nationwide and online at http://www.nrdc.org/naturesvoice/default.asp (sample issue at Attachment 3), as well as other newsletters and alerts. NRDC's *Earth Action* email list has more than 145,000 subscribers who receive biweekly information on urgent environmental issues (sample email at Attachment 4). This information is also made available through NRDC's online Action Center at http://www.nrdc.org/action/default.asp (Attachment 5). NRDC sends its *Legislative Watch* bulletin to more than 35,000 people biweekly during Congressional sessions (sample email bulletin at Attachment 6) and publishes the bulletin online at http://www.nrdc.org/legislation/legwatch.asp (Attachment 7). *This Green Life* is an electronic newsletter on environmentally sustainable living distributed by email to more than 60,000 subscribers (sample email at Attachment 8) and made available online at http://www.nrdc.org/thisgreenlife/default.asp (Attachment 9). NRDC issues press releases; participates in press conferences and interviews with reporters and editorial writers; and has over twenty staff members dedicated to communications work, *see* "Communications" staff list at http://www.nrdc.org/about/staff.asp (Attachment 10). Finally, NRDC employees provide Congressional testimony, appear on television, radio and web broadcasts and at conferences; and

3

contribute to numerous national newspapers, magazines, academic journals, other periodicals, and books. *See, e.g.*, Attachments 11 (testimony of Gina M. Solomon, M.D., M.P.H., NRDC Senior Scientist, before United States Senate Committee on Environment and Public Works, Feb. 6, 2007), 12 (transcript, "Climate Change: Experts gauge fallout from G8 nations' nonbinding decision on global warming, E&ETV, *On Point*, July 12, 2005 (featuring NRDC Climate Center Deputy Director Dan Lashof)), 13 (transcript, "Protest Raised over New Tests of Naval Sonar," National Public Radio, *All Things Considered*, July 24, 2007 (featuring NRDC Marine Mammal Project Director Joel Reynolds)), 14 (conference panel outline, "Enforcement of Environmental Laws: Equalizing Effect on Compliance Efforts?," 2007 Environmental Law Conference at Yosemite, Oct. 19, 2007 (featuring NRDC Senior Attorney Michael E. Wall)), 15 (editorial, "California's cool(ing) opportunity," *San Francisco Chronicle*, Apr. 11. 2006 (co-authored by NRDC California Energy Program Director Devra Wang)), and 16 (publisher's notes to *Saving Energy, Growing Jobs: How Environmental Protection Promotes Economic Growth, Profitability, Innovation and Competition* (Bay Tree Publishing 2007), by NRDC Energy Program Director David B. Goldstein)); *see also* Attachments 17-37, discussed below.

NRDC routinely uses FOIA to obtain information from federal agencies that NRDC legal and scientific experts analyze in order to inform the public about a variety of issues including energy policy, climate change, wildlife protection, nuclear weapons, pesticides, drinking water safety, and air quality. Some specific examples are provided below:

(1)    NRDC obtained through a court-enforced FOIA request records of the operations of Bush Administration's Energy Task Force, headed by Vice President Dick Cheney. It made those records available, along with analysis of selected excerpts and links to the administration's index of withheld documents, on NRDC's website at http://www.nrdc.org/air/energy/taskforce/tfinx.asp (Attachment 17). NRDC's efforts helped to inform the public about an issue that, even before the records' release, had attracted considerable attention. *See, e.g.*, Elizabeth Shogren, "Bush Gets One-Two Punch on Energy," *L.A. Times* (Mar. 28, 2002), at A22 (Attachment 18); Bennett Roth, "Houston Energy-Drilling Firm Appears in Documents from Energy Department," *Houston Chronicle* (Apr. 12, 2002) (Attachment 19).

(2)    NRDC obtained through a FOIA request a memorandum by ExxonMobil advocating the replacement of a highly respected atmospheric scientist, Dr. Robert Watson, as the head of the Intergovernmental Panel on Climate Change. NRDC used this memorandum to help inform the public about what may have been behind the decision by the Bush Administration to replace Dr. Watson. *See* NRDC Press Release and attached Exxon memorandum, "Confidential Papers Show Exxon Hand in White House Move to Oust Top Scientist from International Global Warming Panel," (April 3, 2002) (Attachment 20); Elizabeth Shogren, "Charges Fly Over Science Panel Pick," *L.A. Times* (April 4, 2002), at A19 (Attachment 21).

(3)    NRDC incorporated information obtained through FOIA into a 2005 report, published and provided free of charge at NRDC's website, *see* http://www.nrdc.org/wildlife/marine/sound/contents.asp, on the impacts of military sonar and other industrial noise pollution on marine life. *See Sounding the Depths II: The Rising Toll of Sonar, Shipping and Industrial Ocean Noise on Marine Life.* See NRDC,

4

*Sounding the Depths II* (Nov. 2005) (update to 1999 report) (Attachment 22). Since the report's publication, the sonar issue has continued to attract widespread public attention. *See, e.g.*, "Protest Raised over New Tests of Naval Sonar," National Public Radio, *All Things Considered*, July 24, 2007 (transcript at Attachment 13).

(4)     NRDC scientists have used information obtained through FOIA to publish analyses of the United States' and other nations' nuclear weapons programs. In 2004, for example, NRDC scientists incorporated information obtained through FOIA into a feature article on the United States' plans to deploy a ballistic missile system and the implications for global security. *See* Hans M. Kristensen, Matthew G. McKinzie, and Robert S. Norris, "The Protection Paradox," *Bulletin of Atomic Scientists* (March/April 2004) (Attachment 23).

(5)     NRDC has used White House documents obtained through FOIA to inform the public about EPA's failures to protect wildlife and workers from the pesticide atrazine in the face of industry pressure to keep atrazine on the market. *See* http://www.nrdc.org/health/pesticides/natrazine.asp (Attachment 24); *see also* William Souder, "It's Not Easy Being Green: Are Weed-Killers Turning Frogs Into Hermaphrodites?," *Harper's Bazaar* (Aug. 1, 2006) (referencing documents obtained and posted online by NRDC) (Attachment 25).

(6)     NRDC has obtained through FOIA information on the levels of arsenic in drinking water supplies across the country. NRDC incorporated much of the information into a report, *Arsenic and Old Laws* (2000), printed and made available online through NRDC's website, *see* http://www.nrdc.org/water/drinking/arsenic/aolinx.asp (Attachment 26), and provided analysis describing its significance and guiding interested members of the public on how to learn more about arsenic in their own drinking water supplies. *Id.*; *see also* Steve LaRue, "EPA Aims to Cut Levels of Arsenic in Well Water," *San Diego Union-Tribune* (June 5, 2000) at B1 (referencing NRDC report) (Attachment 27).

(7)     In 2000, NRDC used information obtained through FOIA to publish a report analyzing the impacts of manure pollution from large livestock feedlots on human health, fish and wildlife. *See* NRDC, *Spills & Kills* (Aug. 2000) (Attachment 28).

(8)     In 1999, NRDC obtained through FOIA a Defense Department document, *History of the Custody and Deployment of Nuclear Weapons: July 1945 through September 1977.* The document attracted significant press attention once it was disclosed. *See, e.g.*, Walter Pincus, "Study Says U.S. Secretly Placed Bombs; Cold War Deployments Affected Mostly Allies," *Washington Post* (Oct. 20, 1999) at A3 (Attachment 29). One of NRDC's nuclear scientists, Robert Norris, published a detailed analysis of this document explaining its significance to the public. Robert S. Norris, William M. Arkin, and William Burr, "Where They Were," *Bulletin of Atomic Scientists* (Nov/Dec 1999) (Attachment 30).

(9)     In 1996, NRDC obtained through FOIA test results regarding lead levels in the District of Columbia's drinking water supplies. NRDC made the test results public along

5

with analysis explaining the significance of the results. *See* D'Vera Cohn, "Tap Water Safeguards Still Stalled; City Failed to Tell Some Residents of Excess Lead Contamination," *Washington Post* (Apr. 18, 1996) at J1 (Attachment 31).

(10)    In 1989, NRDC obtained through FOIA testimony, previously suppressed by the first Bush administration, by federal experts who opposed oil drilling off the coasts of California and Florida. *See* Larry Liebert, "Oil Testimony Reportedly Quashed; Environmentalists say Federal Experts Pressured by Bush," *Orange County Register* (Oct. 5, 1989) at A6 (Attachment 32).

(11)    In 1988, NRDC obtained through FOIA a report by the U.S. Fish and Wildlife Service that declared that the government's review of offshore oil drilling in Northern California was incomplete and overly optimistic. Reagan Administration officials had tried to keep the report secret and then repudiated it upon its release. *See* Eric Lichtblau, "Federal Report Blasts Offshore Oil Studies," *L.A. Times* (June 4, 1988) at A32 (Attachment 33).

(12)    In 1982, NRDC obtained through a FOIA request an EPA memorandum stating that most air pollution monitors have repeatedly underestimated levels of toxic lead in the air. NRDC used the memorandum to inform the public about the consequences of EPA's proposal to relax restrictions on lead in gasoline. *See* Sandra Sugawara, "Lead in Air is Undermeasured, EPA Section Chief's Memo Says," *Washington Post* (July 11, 1982) at A6 (Attachment 34).

Disclosure of the requested documents is "likely to contribute significantly to public understanding" of EPA's activities concerning the California waiver request, 5 U.S.C. § 552(a)(4)(iii), because NRDC intends to disseminate any newsworthy information in the released records, and its analysis of such records, to its member base and to the broader public, through one or more of the many communications channels referenced above. As NRDC's long history of incorporating information obtained through FOIA into reports, articles and other communications illustrates, NRDC is well prepared to convey to the public any relevant information it obtains through this records request.[2]

## B.    Second Requirement

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request because NRDC does not have any commercial interest that would be furthered by the requested disclosure. 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(*l*)(1). NRDC is a not-for-profit organization and, as such, has no commercial interest. 40 C.F.R. § 2.107(*l*)(3)(i). "Congress

---

[2] For example, information NRDC obtained through FOIA requests resulted in the following articles, in addition to those referenced above: Felicity Barringer, "Science Panel Issues Report on Exposure to Pollutant," *New York Times* (Jan. 11, 2005) (Attachment 36); Katharine Q. Seelye, "Draft of Air Rule is Said to Exempt Many Old Plants," *New York Times* (Aug. 22, 2003) (Attachment 36); Don Van Natta, Jr., "E-Mail Suggests Energy Official Encouraged Lobbyist on Policy," *New York Times* (Apr. 27, 2002) (Attachment 37).

6

amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citation omitted). NRDC's interest in obtaining the requested materials is to serve the public interest by disclosing presently non-public information about EPA's activities relating to the agency's consideration of California's request for a waiver under Section 209 of the Clean Air Act, as described above.

As discussed below, NRDC is also a representative of the media seeking information in the public interest.

### C.    NRDC Is a Media Requester

Even if EPA denies a public interest waiver of all costs and fees, NRDC is a representative of the news media entitled to a reduction of fees under the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and EPA's FOIA regulations, 40 C.F.R. § 2.107(c)(1)(iii), (*l*). *See generally Elec. Privacy Info. Ctr. v. United States Dep't of Def.*, 241 F. Supp. 2d 5, 11-14 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOIA where it publishes books and newsletters on issues of current interest to the public). As described earlier in this request, NRDC publishes a quarterly magazine, *OnEarth*, which has approximately 450,000 readers and is available at newsstands and bookstores; publishes a periodic newsletter for its more than 420,000 members nationally; issues regular electronic newsletters, action alerts, public reports and analyses; and maintains a free online library of reports and analyses. These publications routinely include information about current events of interest to the readership and the public. NRDC staff members are also regular contributors to numerous periodicals and books; television, radio, and web programs; and hearings and conferences. As previously noted, information obtained as a result of this request will, if appropriately newsworthy, be disseminated through one or more of NRDC's publications or other suitable channels.

### III.    Willingness to Pay Fees Under Protest

Please provide the records above irrespective of the status and outcome of your evaluation of NRDC's fee category assertion and fee waiver request. In order to prevent delay in EPA's provision of the requested records, NRDC states that it will, if necessary and under protest, pay fees in accordance with 40 C.F.R. § 2.107(c)(1)(iv), (c)(2), and (d). Please consult with me, however, before undertaking any action that would cause the fee to exceed five hundred dollars. Such payment will not constitute any waiver of NRDC's right to seek administrative or judicial review of any denial of its fee waiver request and/or rejection of its fee category assertion.

### IV.    Conclusion

I trust that, in responding to this request, EPA will comply with all relevant deadlines and other obligations set forth in FOIA and EPA's regulations. *See, e.g.*, 40 C.F.R. § 2.014(a)-(d), (f).

Please produce the records above by sending them to me at the address appearing on the first page of this letter. Please produce them on a rolling basis; at no point should EPA's search for—

or deliberations concerning—certain records delay the production of others that EPA has already retrieved and elected to produce.

In the event EPA concludes that some of the records requested above may already be publicly available, I will be happy to discuss those conclusions in an effort to narrow the scope of this request. Please do not hesitate to call or email me with questions.

Thank you for your prompt attention to this request.

Sincerely,

*David Doniger /TC*

David Doniger
Policy Director, Climate Center
Natural Resources Defense Council
(202) 289-2403
ddoniger@nrdc.org

**Enclosures (in hard copy and on CD-ROM):**

Exhibits A through G
Attachments 1 through 37

# FREEDOM OF INFORMATION ACT REQUEST
## HQ-RIN-00516-08

**REQUESTER:** David Doniger       **Request Date:** December 20, 2007

**COMPANY:** Natural Resources Defense    **Received Date:** December 20, 2007
Council

**FEE Category:** Other

**Subject:** copy of records relating to CA's request for waiver under Section 209 of Clean Air Act to enforce state's regulations of carbon dioxide and greenhouse gas emissions from motor vehicles

**Due Date:** January 23, 2008

**ASSIGNMENTS:**
OAR

**SPECIAL INSTRUCTIONS:**

12/21/07 Enclosure too large to scan so sent via inner office mail.

Fee Waiver Granted (per Larry Gottesman 12/21/07)

FS:   lp



## e

### enVIRONMenTaL DeFenSe

finding the ways that work

December 27, 2007

**VIA FAX AND FEDERAL EXPRESS**

Larry F. Gottesman
National FOIA Officer
U.S. Environmental Protection Agency
Records, FOIA and Privacy Branch
Mail Code 2822T
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460
FAX: (202) 566-2147

*(handwritten:)* OAR
HQ-RIN-00541-08
Due: 01/29/08

Re: <u>FREEDOM OF INFORMATION ACT REQUEST REGARDING DECISION TO
DENY CALIFORNIA A WAIVER UNDER CLEAN AIR ACT SECTION 209</u>

Dear Mr. Gottesman,

On behalf of the Environmental Defense Fund ("EDF"), we write to request the disclosure of
records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the
pertinent Environmental Protection Agency ("EPA") regulations, 40 C.F.R. § 2.100, *et seq.*

## I. Description of Records Sought

In connection with the letter dated December 19, 2007 from Stephen L. Johnson (the
Administrator) to the Honorable Arnold Schwarzenegger, Governor of the State of California,
and the statements made by the Administrator at his press conference on December 19, 2007
that commenced on or shortly after 6:30 p.m. eastern standard time, denying the request by the
State of California for a waiver under Section 209(b) of the Clean Air Act (CAA) for its motor
vehicle greenhouse gas (GHG) emissions standards rule, aka the Pavley rule (hereinafter the
California rule), we request the following documents at or under the control of the
Administrator or other employees of the US Environmental Protection Act pursuant to the
Freedom of Information Act (where the term "documents" includes memoranda, studies, reports
and other written materials):

1. Any document that purports to be and explains and justifies any final decision of the
Administrator relating to the request by California for a waiver under CAA Section 209(b) of its
California rule.

2. All documents that support or describe the method that the Administrator or his staff used in
concluding that the California rule would achieve a fleet-wide average of 33.8 mpg in 2016 if its
standards for gasoline-powered PC/LDT1s and LDT2s were converted from $CO_2$ equivalents

National Headquarters · 257 Park Avenue South · New York, NY 10010 · Tel 212 505 2100 · Fax 212 505 2375 · environmentaldefense.org
Austin · Boston · Boulder · Los Angeles · Raleigh · Sacramento · San Francisco · Washington  *Project offices:* Beijing, China · Bentonville, AR

to mpg, including the specification of the model year, fleet mix for that model year between those two categories and grams of carbon per MBTU that were used and documents that include similar calculations using post-2002 model years 2003, 2004, 2005, 2006 and 2007.

3. All documents that assess and compare the GHG reduction and other environmental and health benefits or impacts of a) a national mpg standard that the Energy Independence and Security Act mandates, b) the California rule with its adoption by other states in accordance with Section 177 of the CAA and c) a national standard combined with the California rule for model years 2009-2016 and 2020.

4. All documents that describe, assess and compare the GHG emission reductions and associated public health and welfare impacts of a) the national GHG emission standard or standards to which the Administrator refers in his December 19, 2007 letter and b) the California rule for model years 2009, 2010, 2011, 2012, 2013, 2014, 2015 and 2016, the model years for which California has adopted GHG emission standards and has requested a waiver.

5. All documents that deal with and present evidence relating to whether the California rule is at least as protective of public health and welfare as any federal rule pertaining to emissions of GHGs and that support findings by the Administrator, if any, relating to the protectiveness waiver factor in Section 209(b).

6. All documents that deal with and present evidence relating to the technological feasibility and economic practicability of compliance by auto makers with the GHG emission standards of the California rule and that support findings by the Administrator, if any, relating to the third waiver factor set forth in Section 209(b) of the CAA.

7. All documents, including staff-generated documents, that describe or assess the scope and magnitude of likely impact of global warming on a) California's municipal and agricultural water supply system and its snow pact, b) the frequency, occurrence and magnitude of wildfires proximate to urban and suburban areas, c) urban ozone concentrations and d) erosion of the State's coast line and coastal resources and the vulnerability of California's water supply system, air quality and coastal resources to global warming.

8. All staff-generated documents that relate to, support or disagree with the finding of the Administrator that California "does not need such state standards to meet compelling and extraordinary conditions," the waiver factor described in CAA Section 209(b)(1)(B).

9. All staff-generated documents that relate to assessments that CO2 and other GHG emissions from motor vehicles in the United States are or are not reasonably anticipated to adversely affect public health and welfare.

10. All documents, including staff-generated and Administrator-generated documents, that support any decision of the Administrator that motor vehicle CO2 and other GHG emissions do not and are not reasonably anticipated to adversely affect public health and welfare

11. All documents, including staff-generated documents, that relate to, support, justify or oppose the proposal and promulgation of federal motor vehicle CO2 and other GHG emission standards pursuant to Section 202 of the CAA.

12. All documents, including staff-generated and Administrator-generated documents, that support any decision of the Administrator not to propose and promulgate federal motor vehicle CO2 and other GHG emission standards pursuant to Section 202 of the CAA assessment of such action.

13. All documents that explain or describe how EPA actions relating to motor vehicle GHG emissions is fulfilling its 'statutory obligation wholly independent of DOT's mandate to promote energy efficiency" to protect the publics health and welfare as articulated by the US Supreme Court in its decision of April 2, 2007 in Commonwealth of Massachusetts v. EPA.

14. All documents that describe the rationale for, support or oppose any decision or action of the Administrator to transfer to the US Department of Transportation responsibility to set federal motor vehicle GHG emission standards under the Energy Independence and Security Act of 2007 as described in the letter from the Administrator to Governor Arnold Schwarzenegger dated December 19, 2007.

15. Any documents and emails a) from the Administrator or any other EPA employee to any employee of the Executive Office of the President, including but not limited to the Office of Management and Budget and the Council on Environmental Quality, or any employee of the Office of the Vice President or b) from any such employee of the Executive Office of the President or Vice President to the Administrator or any other employee or employees of EPA pertaining to items 7 through 14 above

We would also request copies of documents that EPA furnishes to the Natural Resources Defense Council ("NRDC") pursuant to its FOIA letter of December 20, 2007.

To the extent that records responsive to this request were already available in the public docket in the matter of California State Motor Vehicle Pollution Control Standards - Request for Waiver of Preemption Under Clean Air Act Section 209(b) for Greenhouse Gas Emissions, EPA-HQOAR-2006-0 173, as of midnight Eastern time on December 19, 2007, please identify such records, but EPA need not supply such records separately.

## II. Request for a Fee Waiver

EDF requests that EPA waive the fee that it would otherwise charge for search and production of the records described above. FOIA dictates that requested records be provided without charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(l)(l). The requested disclosure would meet both of these requirements. In addition, EDF qualifies as a "representative of the news media" entitled to a reduction of fees under the FOIA. 5 U.S.C. § 552(a)(4)(A)(ii)(II); 40 C.F.R. § 2.107(c)(1)(iii).

A. First Requirement

The disclosure requested here would be "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). Specifically, the requested disclosure would satisfy the four elements identified at 40 C.F.R. § 2.107(l)(2).

The records described in Section I above shed light on a matter of considerable public interest and concern: whether California and other states may act on their own to address the imminent threat to human health and the environment presented by climate change and greenhouse gas emissions, by adopting and enforcing their own regulations of carbon dioxide and greenhouse gas emissions from motor vehicles that are more stringent than federal standards. EPA's consideration of California's request for a waiver under Section 209 of the Clean Air Act has already attracted widespread media attention, including several recent articles in national newspapers and magazines and national broadcast news features. See, e.g., Juliet Eilperin, "EPA Chief Denies Calif. Limit on Auto Emissions," Wash. Post, Dec. 20, 2007, at AOl (attached as Exhibit A) (also available at http://www.washingtonpost.comlwpdyn/contentlarticle/2007/1271 9/AR2007 12190201 2.html); Micheline Maynard, "E.P.A. Denies California Emission's Waiver," NY Times, Dec. 19, 2007 (attached as Exhibit B) (also available at http://www.nytimes.com/2007/12/19/washington/20epa-web.html); Reuters, "EPA Denies States the Right to Fight Global Warming," Reuters, Dec. 19, 2007 John M. Broder & Felicity Barringer, "EPA Says 17 States Can't Set Greenhouse Gas Rules For Cars," N.Y. Times, Dec. 20, 2007 (attached as Exhibit C) (also available at http://www.reuters.com/article/pressRelease/idUS16109+20-Dec-2007+PRN20071220); Environment News Service, "California Tailpipe Emissions Law Upheld in Federal Court," International Daily Newswire, (Dec. 12, 2007) (attached as Exhibit D) (also available at http://www.ens-newswire.com/ens/dec2007/2007-12-12-091.asp); Bryan Walsh, "California's Christmas List: Clean Air," Time.com, Nov. 8, 2007 (attached as Exhibit E) (also available at http://www.time.comltime/health/article/ 0,8599,1682116,00.html); Transcript, National Public Radio, "EPA Rejects California's Stricter Emissions Limits," Dec. 19, 2007 (available at http://www.npr.org/templates/story/story.php?storyId= 17429142).

The records requested here pertain to EPA's consideration of California's request for a waiver under Clean Air Act Section 209. The records thus concern "the operations or activities of the government," 40 C.F.R. § 2.107(l)(2)(i). The tailored request in this letter seeks disclosure of important records concerning EPA's activities that will contribute meaningfully and significantly to the public's understanding of those activities, including to the public's understanding of the alternative legal bases and policy justifications considered by the agency with respect to the California waiver request and associated actions described in the Administrator's letters of December 19, 2007 to Governor Arnold Schwarzenegger concerning the role that the Energy independence and Security Act of 2007 played in the waiver decision. Id. § 2.107(l)(2) (ii), (iv). Disclosure of these records will also "contribute to the understanding of a reasonably broad audience of persons interested in the subject," 40 C.F.R. § 2.107(l)(2)(iii), because EDF will disseminate summary and analysis of any newsworthy information conveyed in the requested records.

EDF has a proven ability to digest and disseminate such information to the public quickly,

through numerous and varied publications, educational programs, media initiatives, and public interest litigation. For example, EDF featured California's waiver request in the November 2007 issue of its newsletter, *Solutions*, which is sent to approximately 200,000 households five times a year and is also available free of charge at http://www.edf.org/page.cfm?tagID=578.org (Environmental Defense Fund, "Historic greenhouse gas ruling paves the way for cleaner cars nationwide," *Solutions*, Vol. 38, No. 5 November 2007, p. 1-2). In addition, the waiver was mentioned in the *2007 Annual Report*, which is sent to approximately 30,000 households and is also available electronically at http://www.edf.org/documents/7452_2007_Annual_Report.pdf (Environmental Defense Fund, "Global Warming: States Rise to the Challenge," *2007 Annual Report*, 2007, p. 8-9).

EDF also has the ability to disseminate information on the California waiver request through its website (www.edf.org) (homepage at Attachment 1) which is updated daily and draws approximately 1.2 million page views and 400,000 visits per month, future issues of *Solutions* (sample issue at Attachment 2); its *Climate 411* blog (sample thread at Attachment 3), as well as other alerts and online postings. EDF's *Action Alert* email list has more than 450,000 subscribers who receive bimonthly information on urgent environmental issues (sample email at Attachment 4). This information is also made available on our website at http://www.environmentaldefense.org/page.cfm?tagID=820. EDF also has a website dedicated exclusively to climate change, which can be found at http://www.fightglobalwarming.com/ (homepage at Attachment 5).

EDF issues press releases; participates in press conferences and interviews with reporters and editorial writers; and has over forty staff members dedicated to communications work. See "Marketing and Communications Staff" and "Program Communications Staff" in its 2007 Annual Report (http://www.edf.org/page.cfm?tagID=476 )(Attachment 6). Finally, EDF employees provide Congressional testimony, appear on television, radio and web broadcasts and at conferences; and contribute to numerous national newspapers, magazines, academic journals, other periodicals, and books. See, e.g., Attachments 7 (testimony of Fred Krupp , EDF President, before United States Senate Committee Environment and Public Works, Nov. 15, 2007), 8 ("EPA Refuses California's Stricter Limits on Emissions," National Public Radio, *Day by Day*, December 20, 2007 (featuring EDF Deputy General Counsel Vickie Patton available at http://www.npr.org/templates/story/story.php?storyId=17452633)), and 9 (editorial, "Bridge Fare Proves Fairest," *New York Sun*, Apr. 24, 2009 (co-authored by the senior scientist of EDF's Health Program Dr. John Balbus)).

Disclosure of the requested documents is "likely to contribute significantly to public understanding" of EPA's activities concerning the California waiver request, 5 U.S.C. § 552(a)(4)(iii), because EDF intends to disseminate any newsworthy information in the released records, and its analysis of such records, to its member base and to the broader public, through one or more of the many communications channels referenced above. As EDF's long history of incorporating information obtained through FOIA into reports, articles and other communications illustrates, EDF is well prepared to convey to the public any relevant information it obtains through this records request.

### B. Second Requirement

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request because EDF does not have any commercial interest that would be furthered by the requested disclosure. 5 U.S.C. § 552(a)(4)(A)(iii); 40 C.F.R. § 2.107(1)(i). EDF is a not-for-profit organization and, as such, has no commercial interest. 40 C.F.R. § 2. 107(i)(3)(i). "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citation omitted). EDF's interest in obtaining the requested materials is to serve the public interest by disclosing presently non-public information about EPA's activities relating to the agency's consideration of California's request for a waiver under Section 209 of the Clean Air Act, as described above.

As discussed below, EDF is also a representative of the media seeking information in the public interest.

### C. EDF Is a Media Requester

Even if EPA denies a public interest waiver of all costs and fees, EDF is a representative of the news media entitled to a reduction of fees under the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(1J), and EPA's FOIA regulations, 40 C.F.R. § 2.107(c)(1)(iii), *(1). See generally Elec. Privacy Info. Ctr. v. United States Dep 't of Def*, 241 F. Supp. 2d 5, 11-14 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOTA where it publishes books and newsletters on issues of current interest to the public).

### III. Willingness to Pay Fees Under Protest

Please provide the records above irrespective of the status and outcome of your evaluation of EDF's fee category assertion and fee waiver request. In order to prevent delay in EPA's provision of the requested records, EDF states that it will, if necessary and under protest, pay fees in accordance with 40 C.F.R. § 2.107(c)(1)(iv), (c)(2), and (d). Please consult with me, however, before undertaking any action that would cause the fee to exceed five hundred dollars. Such payment will not constitute any waiver of EDF's right to seek administrative or judicial review of any denial of its fee waiver request and/or rejection of its fee category assertion.

### IV. Conclusion

We trust that, in responding to this request, EPA will comply with all relevant deadlines and other obligations set forth in FOIA and EPA's regulations. *See, e.g.*, 40 C.F.R. § 2.014(a)-(d), (f).

Please produce the records above by sending them to me at the address appearing on the first page of this letter. Please produce them on a rolling basis; at no point should EPA's search for—or deliberations concerning—certain records delay the production of others that EPA has already retrieved and elected to produce.

In the event EPA concludes that some of the records requested above may already be publicly available, we will be happy to discuss those conclusions in an effort to narrow the scope of this request. Please do not hesitate to call or email me with questions.

# FREEDOM OF INFORMATION ACT REQUEST
## HQ-RIN-00541-08

**REQUESTER:** Andrew Hughes            **Request Date:** December 27, 2007

**COMPANY:** Environmental Defense       **Received Date:** December 28, 2007

**FEE Category:** Other

**Subject:** Copy of documents regarding decision to deny California a waiver under the Clean Air Act Section 209

**Due Date:** January 29, 2008

**ASSIGNMENTS:**
OAR

**SPECIAL INSTRUCTIONS:**
FEE WAIVER REQUESTED. PLEASE CONTACT LINDA PERSON AT 566-1661 BY 01/09/08 REGARDING THE BILLABLE CHARGES FOR THIS REQUEST.

IF COSTS ARE EXPECTED TO
EXCEED $25.00, CONTACT
REQUESTER FOR PAYMENT
COMMITMENT BEFORE
PROCESSING REQUEST.


FS:   LP

# e

## ENVIRONMENTAL DEFENSE

### finding the ways that work

---

### FACSIMILE TRANSMITTAL SHEET

| TO: Larry Gottesman | FROM: Andrew Hughes |
|---|---|
| COMPANY: US EPA | DATE: 12/27 |
| FAX NUMBER: (202) 566-2147 | TOTAL NO. OF PAGES INCLUDING COVER: 8 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: FOIA Request | YOUR REFERENCE NUMBER: |

☒ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

---

NOTES/COMMENTS:

Attachments referred to here in will arrive with another copy of the request via Federal Express.



RECEIVED
DEC 2 8 2007

---

257 PARK AVENUE SOUTH    NEW YORK, NY 10010
PHONE: 212-505-2100    FAX: 212-533-6748

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE KAPLAN

------------------------------------------------------------x

NATURAL RESOURCES DEFENSE COUNCIL, INC.,
and ENVIRONMENTAL DEFENSE,

        Plaintiffs,

  - v. -

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY,

        Defendant.

------------------------------------------------------------x

## 08 CV 1082

Civ. No. _____



## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTORY STATEMENT

1.    Plaintiffs Natural Resources Defense Council, Inc. ("NRDC") and Environmental Defense ("ED") (collectively "Plaintiffs") assert violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*, by defendant United States Environmental Protection Agency ("EPA"), for refusing to disclose responsive records concerning EPA's December 19, 2007 announcement that it intended to deny a waiver under Section 209(b) of the Clean Air Act, for California's standards for greenhouse gas ("GHG") emissions from new cars and light trucks, which California adopted to address the state's contributions to global warming.

2.    Global warming will cause extraordinary harm to public health and natural resources across the United States and the world. Scientists predict that unless we curb global warming emissions, average U.S. temperatures could be 3 to 9 degrees higher by the end of the century. Such an increase in temperature will, among other effects, cause substantial disruption to agriculture and natural biota, increase the prevalence of drought across much of the American

West, exacerbate air pollution in urban areas, and may lead to substantial sea level rise and flooding of coastal areas.

3.    Global warming is caused by emissions of greenhouse gases ("GHG") into the atmosphere. Vehicle emissions contribute a substantial portion of the greenhouse gas pollution emitted in the United States.

4.    In response to the threat of global warming, the California Legislature adopted Assembly Bill 1493, which required the California Air Resources Board ("CARB") to develop and adopt a regulation for the control of GHG emissions by light-duty motor vehicles. On December 21, 2005, after CARB approved regulations limiting GHG emissions from motor vehicles, California applied to EPA for waiver of federal preemption under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

5.    Pursuant to Clean Air Act § 177, 42 U.S.C. § 7507, at least twelve (12) states have adopted the California vehicle GHG emissions standards, and at least six (6) additional states are considering adopting them.

6.    According to CARB's projections, if EPA grants California's waiver application and the vehicle GHG emissions standards are enforced in California, California's greenhouse gas emissions would be reduced by about 30 million metric tons in 2020. CARB further projects that, if the vehicle GHG emissions standards are enforced in the at least twelve other states that have already adopted them, the total 2020 reductions in GHG emissions would be approximately 74 million metric tons.

7.    A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming.

8.    On December 19, 2007, EPA Administrator Stephen L. Johnson announced that EPA intended to deny California's waiver request in a letter to Arnold Schwarzenegger, Governor of California.

9.    On December 20, 2007, NRDC submitted a FOIA request to EPA, seeking records relating to the California waiver request.

10.    On December 27, 2007, ED submitted a FOIA request to EPA, seeking records relating to the California waiver request.

11.    EPA has failed to provide any records in response to either NRDC's or ED's FOIA requests, and EPA has otherwise failed to provide either NRDC or EA with an adequate response to their requests.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action, and venue is proper in this district, pursuant to 5 U.S.C. § 552(a)(4)(B), in that Plaintiffs maintain their principal places of business in this district.

## PARTIES

13.    Plaintiff NRDC is a national, not-for-profit membership corporation with its principal place of business in New York, New York. Founded in 1970, NRDC represents more than 420,000 members and activists nationwide, including more than 79,000 members who live in California. NRDC's membership and staff of lawyers, scientists, and other environmental specialists have a longstanding interest in working to address threats to human health and the environment posed by air pollution and global warming. NRDC actively worked to ensure passage of Assembly Bill 1493, as well as to support CARB's implementation of effective vehicle GHG emissions standards and the adoption of those standards by other states.

14.    Plaintiff ED is a national, not-for-profit corporation with its principal place of business in New York, New York. ED has over 340,000 members nationally and over 60,000 members in California. ED specializes in the development of innovative, scientifically-sound, market-based solutions to environmental problems. Through its Climate and Air Program, ED works expansively on the international, national, and state levels to address the causes and effects of global warming. ED supported the adoption of vehicle GHG emissions standards in California as part of its State Climate Action Project.

15.    Plaintiffs both routinely use FOIA to obtain information from federal agencies, which Plaintiffs' legal and scientific experts analyze in order to inform their members and the public about a variety of issues including endangered species, drinking water quality, energy policy, urban air pollution, pesticide regulation, climate change, and nuclear weapons. Plaintiffs both regularly convey important information to their members and the public by way of publications and press releases, as well as by releasing to the public information and documents obtained through FOIA requests.

16.    Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by EPA's failure to provide responsive records. The requested relief will redress these injuries.

17.    Defendant EPA is a federal agency within the meaning of FOIA and has possession or control of records that NRDC seeks in this action.

## STATUTORY FRAMEWORK

18.    FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies. 5 U.S.C.

§ 552(a)(3)(A). These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each document for which it is claimed.

19.     Upon receiving a FOIA request, an agency has twenty working days to respond by determining whether responsive documents exist and whether the agency will release them. 5 U.S.C. § 552(a)(6)(A). If the agency denies the FOIA request, the requester is entitled to appeal the determination within thirty days. FOIA requires the agency to make a determination with respect to an appeal within twenty working days. 5 U.S.C. § 552(a)(6)(A)(ii).

20.     FOIA does not permit an agency to delay an initial response or an appeal determination for longer than ten working days past the statutory deadline, and then only if the agency can demonstrate that it faces "unusual circumstances." 5 U.S.C. § 552(a)(6)(B). "Unusual circumstances" include the need to search for and collect requested documents from other offices, the need to appropriately examine a voluminous amount of separate and distinct records, and the need to consult with another agency. 5 U.S.C. § 552(a)(6)(B)(iii)(I-III).

21.     A requester is entitled to a waiver of fees associated with responding to a FOIA request when the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

22.     When an agency denies, in whole or in part, a request for records under FOIA, the agency must make a "reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request." 5 U.S.C. § 552(a)(6)(F).

23.    FOIA expressly provides that a requester "shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions" governing its response to a FOIA request or an appeal.  5 U.S.C. § 552(a)(6)(C).

## STATEMENT OF FACTS

### A.    EPA's Announcement of Waiver Decision

24.    On December 21, 2005, the Executive Director of CARB, Catherine Witherspoon, submitted to EPA on behalf of the State of California a request that EPA grant California a waiver under Section 209(b) of the Clean Air Act to enforce CARB's standards for greenhouse gas ("GHG") emissions from new cars and light trucks.

25.    On December 19, 2007, EPA Administrator Stephen L. Johnson announced that EPA intended to deny California's waiver request in a letter to Arnold Schwarzenegger, Governor of California.

### B.    NRDC's FOIA Request

26.    On December 20, 2007, NRDC submitted a FOIA request with EPA, requesting all records, and only those records, concerning the California waiver request that were in existence as of midnight Eastern time on December 19, 2007.  The request specifically included, but was not limited to, the following:  (a) all records relating to options for decisions on the California waiver request; (b) all records relating to legal risks or potential litigation outcomes concerning such options; and (c) all records relating to the agency's interpretation of "compelling and extraordinary conditions" under Clean Air Act section 209(b), including prior interpretations of this term.

27.    NRDC's December 20, 2007 FOIA request defined the term "records" to "mean anything denoted by the use of that word or its singular form in the text of FOIA.  In particular,

the term includes, but is not limited to, all writings (handwritten, typed, electronic, or otherwise produced, reproduced, or stored) including, but not limited to, correspondence, minutes of meetings, memoranda, notes, e-mails, notices, facsimiles, charts, tables, presentations, orders, and filings."

28.    NRDC's December 20, 2007 FOIA request stated that, "[t]o the extent that records responsive to this request were already available in the public docket in the matter of California State Motor Vehicle Pollution Control Standards - Request for Waiver of Preemption Under Clean Air Act Section 209(b) for Greenhouse Gas Emissions, EPA-HQ-OAR-2006-0173, as of midnight Eastern time on December 19, 2007," EPA was requested to "identify such records, but EPA need not supply such records separately."

29.    NRDC's December 20, 2007 FOIA request to EPA also included a request that EPA waive the fee that it would otherwise charge to search for and produce responsive records. NRDC claimed entitlement to a fee waiver pursuant to FOIA because "disclosure of the information is in the public interest[,] because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest" of NRDC.  5 U.S.C. § 552(a)(4)(A)(ii)(II).  NRDC provided EPA with material substantiating its entitlement to a fee waiver for its request.

**C.    EPA's Failure to Provide an Adequate Response to NRDC's FOIA Request**

30.    On December 26, 2007, EPA sent a letter to NRDC, notifying NRDC that it was granting it a fee waiver pursuant to FOIA with respect to NRDC's December 20, 2007 request.

31.    Under FOIA and EPA regulations, EPA was obligated to respond to NRDC's December 20, 2007 FOIA request on or before January 19, 2008.

7

32.    To date, other than the letter regarding NRDC's fee waiver request, EPA has not

responded in writing to NRDC's December 20, 2007 FOIA request.  EPA has not informed

NRDC of the number of documents in EPA's possession that are responsive to NRDC's

December 20, 2007 FOIA request.  EPA has not produced any documents nor asserted that any

documents are being withheld under one of the FOIA exemptions.

**D.    ED's FOIA Request**

33.    On December 27, 2007, ED submitted a FOIA request with EPA, requesting all

records in the following categories:

(a) Any document that purports to be and explains and justifies any final decision of

the Administrator relating to the request by California for a waiver under CAA

Section 209(b) of its California rule;

(b) All documents that support or describe the method that the Administrator or his

staff used in concluding that the California rule would achieve a fleet-wide

average of 33.8 mpg in 2016 if its standards for gasoline-powered PC/LDT1s and

LDT2s were converted from CO2 equivalents to mpg, including the specification

of the model year, fleet mix for that model year between those two categories and

grams of carbon per MBTU that were used and documents that include similar

calculations using post-2002 model years 2003, 2004, 2005, 2006 and 2007;

(c) All documents that assess and compare the GHG reduction and other

environmental and health benefits or impacts of a) a national mpg standard that

the Energy Independence and Security Act mandates, b) the California rule with

its adoption by other states in accordance with Section 177 of the CAA and c) a

national standard combined with the California rule for model years 2009-2016

and 2020;

(d) All documents that describe, assess and compare the GHG emission reductions

and associated public health and welfare impacts of a) the national GHG emission

standard or standards to which the Administrator refers in his December 19, 2007

letter and b) the California rule for model years 2009, 2010, 2011, 2012, 2013,

2014, 2015 and 2016, the model years for which California has adopted GHG

emission standards and has requested a waiver;

(e) All documents that deal with and present evidence relating to whether the

California rule is at least as protective of public health and welfare as any federal

rule pertaining to emissions of GHGs and that support findings by the

Administrator, if any, relating to the protectiveness waiver factor in Section

209(b);

(f) All documents that deal with and present evidence relating to the technological

feasibility and economic practicability of compliance by auto makers with the

GHG emission standards of the California rule and that support findings by the

Administrator, if any, relating to the third waiver factor set forth in Section 209(b)

of the CAA;

(g) All documents, including staff-generated documents, that describe or assess the

scope and magnitude of likely impact of global warming on a) California's

municipal and agricultural water supply system and its snow pact, b) the

frequency, occurrence and magnitude of wildfires proximate to urban and

suburban areas, c) urban ozone concentrations and d) erosion of the State's coast

line and coastal resources and the vulnerability of California's water supply

system, air quality and coastal resources to global warming;

(h) All staff-generated documents that relate to, support or disagree with the finding

of the Administrator that California "does not need such state standards to meet

compelling and extraordinary conditions," the waiver factor described in CAA

Section 209(b)(1)(B);

(i) All staff-generated documents that relate to assessments that CO2 and other GHG

emissions from motor vehicles in the United States are or are not reasonably

anticipated to adversely affect public health and welfare;

(j) All documents, including staff-generated and Administrator-generated documents,

that support any decision of the Administrator that motor vehicle CO2 and other

GHG emissions do not and are not reasonably anticipated to adversely affect

public health and welfare;

(k) All documents, including staff-generated documents, that relate to, support,

justify or oppose the proposal and promulgation of federal motor vehicle CO2 and

other GHG emission standards pursuant to Section 202 of the CAA;

(l) All documents, including staff-generated and Administrator-generated documents,

that support any decision of the Administrator not to propose and promulgate

federal motor vehicle CO2 and other GHG emission standards pursuant to Section

202 of the CAA assessment of such action;

(m) All documents that explain or describe how EPA actions relating to motor vehicle

GHG emissions is fulfilling its 'statutory obligation wholly independent of DOT's

mandate to promote energy efficiency" to protect the publics health and welfare

as articulated by the US Supreme Court in its decision of April 2, 2007 in

Commonwealth of Massachusetts v. EPA;

(n) All documents that describe the rationale for, support or oppose any decision or

action of the Administrator to transfer to the US Department of Transportation

responsibility to set federal motor vehicle GHG emission standards under the

Energy Independence and Security Act of 2007 as described in the letter from the

Administrator to Governor Arnold Schwarzenegger dated December 19, 2007;

(o) Any documents and emails a) from the Administrator or any other EPA employee

to any employee of the Executive Office of the President, including but not

limited to the Office of Management and Budget and the Council on

Environmental Quality, or any employee of the Office of the Vice President or b)

from any such employee of the Executive Office of the President or Vice

President to the Administrator or any other employee or employees of EPA

pertaining to subparagraphs (g) through (n) above;

(p) Copies of all documents furnished to NRDC pursuant to its December 20, 2007

FOIA request.

34.    ED's December 27, 2007 FOIA request defines the term "documents" to include

"memoranda, studies, reports and other written materials."

35.    ED's December 27, 2007 FOIA request stated that, "[t]o the extent that records

responsive to this request were already available in the public docket in the matter of California

State Motor Vehicle Pollution Control Standards - Request for Waiver of Preemption Under

Clean Air Act Section 209(b) for Greenhouse Gas Emissions, EPA-HQ-OAR-2006-0173, as of

midnight Eastern time on December 19, 2007," EPA was requested to "identify such records, but EPA need not supply such records separately."

36.     ED's December 27, 2007 FOIA request to EPA also included a request that EPA waive the fee that it would otherwise charge to search for and produce responsive records. ED claimed entitlement to a fee waiver pursuant to FOIA because "disclosure of the information is in the public interest[,] because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest" of ED. 5 U.S.C. § 552(a)(4)(A)(ii)(II). ED provided EPA with material substantiating its entitlement to a fee waiver for its request.

**E.     EPA's Failure to Provide an Adequate Response to ED's FOIA Request**

37.     Under FOIA and EPA regulations, EPA was obligated to respond to ED's December 27, 2007 FOIA request on or before January 29, 2008.

38.     To date, EPA has not responded to ED's December 27, 2007 FOIA request. EPA has not informed NRDC of the number of documents in EPA's possession that are responsive to ED's December 27, 2007 FOIA request. EPA has not produced any documents nor asserted that any documents are being withheld under one of the FOIA exemptions. EPA has not responded to ED's request for a fee waiver.

## CLAIMS FOR RELIEF

### First Claim for Relief (NRDC FOIA Request)

39.     Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs of this Complaint as if fully set forth herein.

40.    By failing to provide all records responsive to NRDC's December 20, 2007 FOIA request, EPA has violated FOIA's mandate to release agency records to the public. 5 U.S.C. § 552(a)(6).

41.    NRDC is entitled to obtain the requested records immediately at no cost.

### Second Claim for Relief (ED FOIA Request)

42.    Plaintiffs reallege and incorporate the allegations of all the preceding paragraphs of this Complaint as if fully set forth herein.

43.    By failing to provide all records responsive to ED's December 27, 2007 FOIA request, EPA has violated FOIA's mandate to release agency records to the public. 5 U.S.C. § 552(a)(6).

44.    Under FOIA, EPA is required to grant ED's request for a fee waiver with respect to its December 27, 2007 FOIA request, because the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

45.    ED is entitled to obtain the requested records immediately at no cost.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment:

(1) declaring that Defendant has violated FOIA by failing to provide all records responsive to Plaintiffs' respective FOIA requests;

(2) ordering that Defendant make all the requested records available to Plaintiffs at no cost within twenty days;

(3) awarding Plaintiffs their litigation costs and reasonable attorneys' fees in this action; and

(4) ordering such other relief as the Court may deem just and proper.

Dated: February 1, 2008
New York, NY

Respectfully submitted,

Mitchell S. Bernard (MB 5823)
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
Phone: (212) 727-2700
Fax: (212) 727-1773

Thomas Cmar (TC 8791)
Natural Resources Defense Council
1200 New York Ave., N.W., Ste. 400
Washington, DC 20005
Phone: (202) 289-2405
Fax: (202) 289-1060

James T.B. Tripp
Environmental Defense
257 Park Avenue South
New York, NY 10010
Phone: (212) 505-2100
Fax: (212) 505-2375

Counsel for Plaintiffs



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

**MAR 2 0 2008**

OFFICE OF CONGRESSIONAL AND
INTERGOVERNMENTAL RELATIONS

The Honorable Henry A. Waxman
Chairman
Committee on Oversight and Government Reform
U. S. House of Representatives
Washington, D.C. 20515

Dear Mr. Chairman:

I am writing on behalf of Administrator Stephen L. Johnson of the U.S. Environmental Protection Agency (EPA or Agency) regarding two matters. First, this is in response to your March 12, 2008 request for copies of documents related to the Agency's draft analysis of whether carbon dioxide and other greenhouse gases emitted by new motor vehicles cause or contribute to air pollution reasonably anticipated to endanger public health or welfare, and the Agency's preliminary work on a regulatory package to address greenhouse gas emissions from motor vehicles. Second, this responds to your March 4, 2008 request and subsequent subpoena for copies of 196 specific documents related to EPA's decision on California's request for a waiver under section 209 of the Clean Air Act.

EPA respects your role as Chairman and is committed to providing the Committee information necessary to satisfy its oversight interests in these matters to the extent possible and consistent with our Constitutional and statutory obligations.

**Endangerment and Greenhouse Gas Rulemaking Documents**

Your March 12 letter sought copies of documents related to EPA's analysis of endangerment conducted since the Supreme Court's April 2007 decision in *Massachusetts v. EPA* as well EPA's development of a greenhouse gas vehicle rule, including communications with the White House or other federal agencies on these matters. You asked that EPA respond by March 28, 2008. As an initial measure, you requested that EPA provide copies of three specific documents by March 14, 2008: a draft technical support document prepared by the Office of Atmospheric Programs; a draft of the endangerment finding; and a draft of the proposed greenhouse gas vehicle rule. EPA provided an interim response on March 14, 2008, informing you that we needed additional time because of the important Executive Branch confidentiality interests implicated by your request. We have also had conversations with your staff in an attempt to seek clarification on the scope and timing of your request. We appreciate these discussions, which have been helpful.

Notwithstanding these efforts, I wanted to provide a further response concerning your request for the three specific documents. Your request for this information implicates very important Executive Branch confidentiality interests. As drafts, the documents you request constitute part of the deliberative process in the development of a regulatory action. Because EPA has not finalized an endangerment finding or any part of a vehicles rule, the documents you reference do not reflect the final thinking of the Agency.

EPA is continuing to consider how best to proceed regarding any regulatory action that would affect emissions of greenhouse gases. While this process continues, EPA has an interest in ensuring predecisional information is not disseminated outside the Agency or Executive Branch and, more importantly, that candid discussions are encouraged. Disclosure of predecisional information could compromise the deliberative process, as well as result in needless public confusion about the status of EPA's efforts on these issues. Disclosure of information at this stage in the deliberative process could also raise questions about whether the Agency's actions were being taken in response to or influenced by proceedings in a legislative or public forum rather than through the established administrative process. For these reasons, EPA does not believe it would be appropriate to share the documents you requested at this time.

EPA recognizes the Committee's strong oversight interest in these issues, and we believe reasonable accommodations can be made that would enable the Committee to conduct its oversight responsibilities to the fullest extent possible while still addressing the confidentiality interests of the Executive Branch. We would be happy to discuss various accommodations with your staff. EPA will continue to evaluate its confidentiality interests in these documents as next steps are taken on these issues.

**California Waiver Documents**

As you know, EPA substantially completed its response to your request on February 22, 2008. In so doing, we estimate that we have spent more than 2,000 hours in staff time and have provided or otherwise made available to the Committee more than 7,000 documents. Given the Administrator's direction to promote transparency to the Committee, the vast majority of these documents containing information pertaining to the California waiver have been provided in full to the Committee, including documents where the Agency has significant and well-established interests in preserving confidentiality about matters involving pending or threatened litigation. In other instances, the Agency has already engaged in extensive accommodations at the expense of the Executive Branch's compelling confidentiality interests.

By letter dated February 11, 2008, you requested unredacted copies of 27 specific documents. EPA responded on February 15, 2008, providing copies of three of the documents. However, EPA also explained that, due to our significant Executive Branch confidentiality interests, we would be unable at such time to provide copies of the 24 remaining documents. As explained in our letter, EPA had already provided as an accommodation all California waiver related information from these documents to the

Committee, either in hard copy or for review by Committee staff. On March 4, 2008, you reiterated your request for unredacted copies of the 24 specified documents and requested copies of an additional 172 documents. On March 13, 2008, you authorized the issuance of a subpoena to obtain copies of these 196 specified documents. EPA has made many efforts to accommodate the Committee's oversight interests, and we are disappointed that the Committee ultimately resorted to a compulsory process, particularly given EPA had already provided copies of or access to all of the documents at issue.

Please find enclosed copies of 162 of the documents you requested. EPA has copied these documents on paper with a legend that reads "Internal Deliberative Document of the U.S. Environmental Protection Agency; Disclosure Authorized to Congress Only for Oversight Purposes in Response to Subpoena." Please note that EPA does not waive any confidentiality interests or litigation privileges in these documents or similar documents in other circumstances. EPA respectfully requests that the Committee protect the documents and the information contained in them from further dissemination. Specifically, should the Committee determine its legislative mandate requires further distribution of this confidential information outside the Committee, we request that such need first be discussed with the Agency to help ensure the Executive Branch's confidentiality interests are protected to the fullest extent possible.

As discussed in our March 12, 2008 letter, a number of the documents you are requesting contain information not only on the California waiver but also on distinct and separate predecisional and deliberative matters, most notably the endangerment analysis and the greenhouse gas vehicle rulemaking. Thus, while EPA has provided all documents related to the California waiver in response to your initial request, these documents also contain information beyond the scope of the California waiver decision. EPA has already made extensive accommodations in order to ensure the Committee obtained all information about the California waiver contained in these documents. We respectfully ask that Committee subsume its request for these 34 documents into its subsequent March 12, 2008 request for information about EPA's work on endangerment and the greenhouse gas vehicle rulemaking. Accordingly, we respectfully request that you hold in abeyance your request and subpoena for 34 of these documents. Please see Attachment A for a list of these documents.

Although EPA has already provided the California waiver portions of these 34 documents for review by the Committee, EPA will provide copies with the California waiver information unredacted to the Committee by close of business today. However, EPA continues to have an important Executive Branch confidentiality interest in the portions that relate to the greenhouse gas vehicle rulemaking and the endangerment analysis because these two matters are at preliminary stages and have not yet been finalized or publicly announced. As discussed above, EPA looks forward to further discussions about ways that we may best accommodate your interest in these matters, including opportunities to review this information in a reading room. Furthermore, EPA will continue to evaluate its confidentiality interests to the extent next steps are taken on these issues.

If you have any questions, please contact me or have your staff call Reynold Meni in my office at (202) 564-3638.

Sincerely,

Christopher P. Bliley
Associate Administrator

cc: The Honorable Tom Davis
      Ranking Minority Member

1

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

2

ELIZABETH J. SHAPIRO

3

ISAAC R. CAMPBELL
United States Department of Justice

4

Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6130

5

Washington, D.C. 20530
Tel: (202) 616-8476

6

Fax: (202) 616-8460
isaac.campbell@usdoj.gov

7

8

Attorneys for Defendant Environmental Protection Agency

9

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

11

PEOPLE OF THE STATE OF CALIFORNIA, *ex* )

12

*rel*. EDMUND G. BROWN JR., ATTORNEY )
GENERAL OF THE STATE OF CALIFORNIA, )

13

                                       )
        Plaintiff,                     )

14

                                       )
    v.                                 )

15

                                       )
ENVIRONMENTAL PROTECTION AGENCY, )

16

                                       )
        Defendant.                     )

17

                                       )
                                       )

18

_____

19

20

CV 08-020735 SC

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF VAUGHN INDEX
WITHIN 14 DAYS**

Date:     April 23, 2008
Time:     10:00 a.m.
Judge:    Honorable Samuel Conti
Place:    Courtroom 1, 17th Floor

        Plaintiff People of the State of California, *ex rel.* Edmund G. Brown, Jr., Attorney General of

21

the State of California's ("Plaintiff") motion to compel defendants Environmental Protection Agency,

22

Department of Transportation/National Highway Traffic Safety Administration and Office of

23

Management and Budget to each produce an index pursuant to Vaughn v. Rosen, 484 F.2d 820, 826-

24

28 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974) ("Vaughn index") was heard on April 23, 2008

25

at 10:00 a.m.  After considering the all papers filed in support of and in opposition to the motion, and

26

hearing oral argument, the Court hereby denies Plaintiff's motion as premature.  See Miscavige v.

27

Internal Revenue Service, 2 F.3d 366, 369 (11th Cir. 1993) (FOIA cases generally should be handled

28

on motions for summary judgment, and plaintiff's early attempt in litigation to obtain a Vaughn index

1    and take discovery was inappropriate until the government first had an opportunity to provide the

2    court with the information necessary to make a decision on the applicable exemptions); and <u>Long v.</u>

3    <u>Dep't of Homeland Security</u>, 436 F. Supp. 2d 38, 44 (D.D.C 2006) (plaintiff's request for a <u>Vaughn</u>

4    index is premature as the government has not yet had a chance to file a dispositive motion and

5    provide the court with the information necessary to make a decision on any material that might be

6    subject to an exemption under the FOIA).

7         The Court hereby orders that defendants shall prepare and submit a <u>Vaughn</u> index

8    concurrently with its motion for summary judgment.

9

10        IT IS SO ORDERED.

11

12   Dated: _____      _____

13                                          Samuel Conti
                                           United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2